UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FOURTH TEE, LLC,

        Plaintiff,

v.                                     CASE NO.  8:12-CV-1249-T-17TGW

AXIS SURPLUS INSURANCE
COMPANY, et al.,

        Defendants.

_____/


ORDER

This cause is before the Court on:


Dkt. 14    Motion to Dismiss (McIver)
Dkt. 15    Motion to Dismiss (Axis)
Dkt. 23    Response
Dkt. 24    Response
Dkt. 25    Motion for Leave to File Reply
Dkt. 31    Stipulation of Dismissal of Claims in Count II
Dkt. 32    Order

Defendants Axis Surplus Insurance Company and William McIver move to
dismiss for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6).


I. Standard of Review


"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short
and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed
factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007),
but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face," Id., at 570.  A claim has facial plausibility when the

Case No. 8:12-CV-1249-T-17TGW

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

III. Discussion

Plaintiff Fourth Tee, LLC pursued claims against Axis Surplus Insurance Company pursuant to a policy issued by Axis for the time period August 9, 2007 to August 9, 2008 (2007 Policy) (Dkt. 10, Ex. B, pp. 68-91), and pursuant to a policy issued by Axis for the time period August 9, 2009 to August 9, 2010 (2010 Policy)(Dkt. 10, Ex. A, pp. 15-64).

The Certificate Declarations for both policies state:

"This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer."

Case No. 8:12-CV-1249-T-17TGW

(Dkt. 10, p. 15, p. 68).

The Florida Insurance Code defines "authorized insurers":

### 624.09. "Authorized," "unauthorized" insurer defined

(1) An "authorized" insurer is one duly authorized by a subsisting certificate of authority issued by the office [Florida Office of Insurance Regulation] to transact insurance in this state.

(2) An "unauthorized" insurer is one not so authorized.

Surplus lines insurers are considered to be unauthorized insurers, but are eligible to transact surplus lines insurance as "eligible surplus insurers." See ss. 626.914, 626.918, Florida Statutes.

S. 627.706(1), Florida Statutes (2007, 2010) provides:

### 627.706.  Sinkhole insurance; catastrophic ground cover collapse; definitions

(1) Every insurer authorized to transact property insurance in this state shall provide coverage for a catastrophic ground cover collapse and shall make available, for an appropriate additional premium, coverage for sinkhole losses on any structure, including contents of personal property contained therein, to the extent provided in the form to which the coverage attaches......

The 2007 Policy and the 2010 Policy contain the following exclusion:

**SINKHOLE EXCLUSION - AX SE 1103**
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY.**

It is understood and agreed that the policy does not cover any claim or

3

Case No. 8:12-CV-1249-T-17TGW

> suit for property damage, bodily injury or medical payments arising out of
> or caused directly or indirectly by sinkhole.  Such loss is excluded
> regardless of any other clause or event contributing concurrently or in any
> sequence to such loss.  We will cover direct loss by fire or explosion
> resulting from sinkhole is covered.  All other provisions of this policy apply.

(Dkt. 10, p. 43, p. 90).

A.  Dkt. 24    Motion to Dismiss (Axis)

Defendant Axis Surplus Lines Insurance Company moves to dismiss for failure to
state a cause of action on the basis that: 1) Axis, a surplus lines insurer, is not subject
to Florida's Sinkhole Statutes under s. 627, Florida Statutes, pursuant to s. 626.913(4),
Florida Statutes; and 2) sinkhole coverage is excluded under the terms of Axis's
policies, which are attached to the Amended Complaint.

Plaintiff Fourth Tee, LLC responds that, at the time that Defendant Axis issued
the 2007 policy to Plaintiff, Defendant Axis was authorized to transact property
insurance in Florida, and section 627.706, Fla. Stat. (2007) provided that where a
property insurer issued a policy without coverage for sinkhole losses, the insurer must
inform the policyholder in the manner specified in section 627.706(4), but Defendant
Axis did not comply with the statutory requirement.

Plaintiff acknowledges that on June 11, 2009, ch. 2009-166 was enacted to
amend section 626.913, Fla. Stat., adding:

> "(4) Except as may be specifically stated to apply to surplus
> lines insurers, the provisions of chapter 627 do not apply to
> surplus lines insurance authorized under ss. 626.913-
> 626.937, the Surplus Lines Law.
>
> The amendments to s. 626.913, Florida Statutes, in this act
> are remedial in nature and operate retroactively to the

4

Case No. 8:12-CV-1249-T-17TGW

> regulation of surplus lines insurers from October 1, 1988,
> except with respect to lawsuits that are filed on or before
> May 15, 2009."

Plaintiff argues that the 2007 Policy was issued prior to the enactment of ch.
2009-166 and did not prominently notify Plaintiff Fourth Tee, LLC that sinkhole
coverage was excluded in compliance with S. 627.706(4)., Fla. Stat. (2007).

Plaintiff further argues that neither the 2007 Policy nor the 2010 Policy had the
words required by s. 626.924, in all capitals.  Plaintiff further alleges that Seacoast
Brokers, LLC issued both the 2007 Policy and the 2010 Policy to Plaintiff Fourth Tee,
LLC pursuant to "the Binding Authority Agreement granted to Seacoast Brokers, LLC by
Axis Surplus Insurance Company." (Dkt. 10, Ex. A, Ex. B).

1.  Count I, S. 627.706, Florida Statutes

In the Amended Company, Plaintiff alleges two dates of loss:  April 1, 2007 and
June 26, 2010.  Plaintiff is seeking a declaratory judgment as to the 2007 Policy and the
2010 Policy.

Plaintiff alleges that Defendant Axis had an affirmative duty to provide coverage
for sinkhole losses under s. 627.706, and had affirmative obligations under ss.
627.7072, 627.7073.

Defendant Axis argues that the Florida Legislature has determined that the
sinkhole statutes do not apply to surplus lines insurers.  S. 626.913(4), Fla. Stat.
(2009).  Defendant Axis further argues that s. 626.913 is remedial in nature, and
operates retroactively to the regulation of surplus lines insurers from October 1, 1998,
except with respect to lawsuits that were filed on or before May 15, 2009.

Case No. 8:12-CV-1249-T-17TGW

Plaintiff argues that, prior to the enactment of ch. 2009-166, surplus lines insurers were exempt from Part I of ch. 627, ss. 627.011-627.381, Fla. Stat., but not from ss. 626.706, 626.707 and 626.7072. Plaintiff further argues that retroactive application of s. 7, ch. 2009-166 to the 2007 Policy is not constitutionally permissible because the amendments are substantive rather than procedural. Menendez v. Progressive Express Ins. Co., 35 So.3d 873, 876 (Fla. 2010).

In determining whether a statute should apply retroactively, the Court determines:  1) whether the Legislature intended for the statute to apply retroactively; 2) if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles. Menendez at 877. Even where the expressed intent for retroactive application is present, the Court will reject retroactive application where it impairs a vested right, creates a new obligation, or imposes a new penalty. Id.   Subsequent legislation which diminishes the value of a contract is repugnant to [the Florida] Constitution. Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077, 1080 (Fla. 1978).

Where an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, the Court may consider the amendment as a legislative interpretation of the original law, and not as a substantive change thereof. Lowry v. Parole and Probation Comm'n, 473 So.2d 1248, 1250 (Fla. 1985). Plaintiff acknowledges that the 2009 Amendment was enacted shortly after the Florida Supreme Court's decision in Essex Insurance Co. v. Zota, 985 So.2d 1036 (Fla. 2008)(holding that surplus lines insurers were exempt from Part I of ch. 627). This suggests that the Legislature intended the 2009 Amendment to clarify rather than make a substantive change.

The Court notes that the Legislature clearly expressed an intent that the 2009 Amendment apply retroactively. In order to determine whether retroactive interpretation

Case No. 8:12-CV-1249-T-17TGW

is constitutionally permissible, the Court must compare the provisions of Ch. 627 involved in this case before and after the 2009 Amendment.

Plaintiff argues that, at the time the 2007 Policy was issued, s. 627.706, Fla. Stat. (2007) required all insurers authorized to transact property insurance in Florida to offer coverage for sinkhole losses, and, where excluded, requires the insurer to prominently notify the insured of that fact.  The Court notes that the definitional sections of s. 627.706 are not at issue in this case.  Plaintiff relies only on the alleged duty to provide coverage in s. 627.706(1).  S. 627.706(1) , Fla. Stat. (2007) provides:

> (1) Every **insurer authorized to transact property insurance in this state shall provide coverage** for a catastrophic ground cover collapse and shall make available, for an appropriate additional premium, coverage for sinkhole losses on any structure, including contents of personal property contained therein, to the extent provided in the form to which the coverage attaches.....

The Court notes that the statutory scheme of the Florida Insurance Code distinguished between "authorized" insurers and "unauthorized" insurers, s. 624.09, Fla. Stat., ss. 626.901-9372, before and after the 2009 Amendment.  Plaintiff recognizes that Defendant Axis is an "unauthorized" insurer and is an "eligible surplus lines insurer."   As stated in s. 626.913(2), Fla. Stat.(2007), the purposes of the Surplus Lines Law are:

> "to provide orderly access for the insuring public of this state to **insurers not authorized to transact insurance in this state,** through only qualified, licensed, and supervised surplus lines agents resident in this state, for insurance coverages and to the extent thereof not procurable from authorized insurers; to protect such authorized insurers, who under the laws of this state must meet certain standards as to policy forms and rates, from unwarranted competition by

Case No. 8:12-CV-1249-T-17TGW

> unauthorized insurers who, in the absence of this law, would
> not be subject to similar requirements; and for other
> purposes as set forth in this Surplus Lines Law."

(Emphasis added).

Plaintiff reported a "date of loss" of April 1, 2007 as to Plaintiff's initial claim.  At that time, the Florida Statutes put surplus lines insurers in the category of "insurers not authorized to transact insurance in this state."   Surplus lines insurance is an alternative type of insurance that is offered by unauthorized insurers for consumers to be able to purchase property liability insurance that is otherwise not offered in the open market by unauthorized insurers.  S. 626.915, Fla. Stat.   According to the statute's plain language, only insurers authorized to transact property insurance in Florida have the duty to provide coverage for a catastrophic ground cover collapse and coverage for sinkhole losses for an additional premium.   Defendant Axis cannot be an "unauthorized insurer" and simultaneously be put in the category of "insurers authorized to transact property insurance in this state" subject to the duties enumerated in s. 627.706.  To accept Plaintiff's argument, the Court would have to ignore the many statutory provisions which refer to surplus lines insurers as "unauthorized insurers."

The notice provision, s. 627.706(4), contains the same requirement before the 2009 Amendment and after the 2009 Amendment:

> (4) Insurers offering policies that exclude coverage for
> sinkhole losses shall inform policyholders in bold type of not
> less than 14 points as follows: "YOUR POLICY PROVIDES
> COVERAGE FOR A CATASTROPHIC GROUND COVER
> COLLAPSE THAT RESULTS IN THE PROPERTY BEING
> CONDEMNED AND UNINHABITABLE. OTHERWISE,
> YOUR POLICY DOES NOT PROVIDE COVERAGE FOR
> SINKHOLE LOSSES. YOU MAY PURCHASE ADDITIONAL
> COVERAGE FOR SINKHOLE LOSSES FOR AN
> ADDITIONAL PREMIUM."

8

Case No. 8:12-CV-1249-T-17TGW

The Court has determined that the duty to provide coverage applies to every insurer authorized to transact property insurance in Florida, and not to unauthorized insurers; therefore the duty to notify of coverage and of the availability of additional coverage for an additional premium in the specific manner spelled out in s. 627.706(4) does not come into play as to Defendant Axis.

This case does not involve depriving Plaintiff of a vested right to coverage by the retroactive application of the definitions within the statute.  Retroactive application of the statute attaches no new legal consequences to events which occurred before the enactment of the statute in 2009 as to s. 627.706(1).  As an "eligible" surplus lines insurer, i.e. an insurer not authorized to transact property insurance in the State of Florida, Defendant Axis was not required to provide coverage for sinkhole losses in 2007 and 2010.  After consideration, the Court **grants** Defendant's Motion to Dismiss as to this issue.

2) Count I, S. 626.924(1)

Defendant Axis argues that the 2007 Policy and the 2010 Policy contain the language required by the above statute.  Defendant Axis further argues that s. 626.924(1) does not require that Defendant include the specified words in capital letters, and, even if the statute did so require, Defendant has substantially complied. Defendant argues that Plaintiff is seeking a remedy not provided by the Legislature. See QBE Insurance Corporation v. Chalfonte Condominium Apartment Association, Inc., 94 So.3d 541, 553 (Fla.  2012).

Plaintiff Fourth Tee responds that the 2007 Policy and the 2010 Policy did not contain the stamped or written statement in all capital letters as required by s. 626.924(1), and therefore were not issued pursuant to the Surplus Lines law.

9

Case No. 8:12-CV-1249-T-17TGW

The Court has determined that the duty to provide coverage applies to every insurer authorized to transact property insurance in Florida, and not to unauthorized insurers; therefore the duty to notify of coverage and of the availability of additional coverage for an additional premium in the specific manner spelled out in s. 627.706(4) does not come into play as to Defendant Axis.

This case does not involve depriving Plaintiff of a vested right to coverage by the retroactive application of the definitions within the statute.  Retroactive application of the statute attaches no new legal consequences to events which occurred before the enactment of the statute in 2009 as to s. 627.706(1).  As an "eligible" surplus lines insurer, i.e. an insurer not authorized to transact property insurance in the State of Florida, Defendant Axis was not required to provide coverage for sinkhole losses in 2007 and 2010.  After consideration, the Court **grants** Defendant's Motion to Dismiss as to this issue.

2) Count I, S. 626.924(1)

Defendant Axis argues that the 2007 Policy and the 2010 Policy contain the language required by the above statute.  Defendant Axis further argues that s. 626.924(1) does not require that Defendant include the specified words in capital letters, and, even if the statute did so require, Defendant has substantially complied. Defendant argues that Plaintiff is seeking a remedy not provided by the Legislature. See QBE Insurance Corporation v. Chalfonte Condominium Apartment Association, Inc., 94 So.3d 541, 553 (Fla.  2012).

Plaintiff Fourth Tee responds that the 2007 Policy and the 2010 Policy did not contain the stamped or written statement in all capital letters as required by s. 626.924(1), and therefore were not issued pursuant to the Surplus Lines law.

9

Case No. 8:12-CV-1249-T-17TGW

The primary factor In determining whether a private right of action arises from the violation of statutory requirements is legislative intent.  See Murthy v.  N. Sinha Corp., 644 So.2d 983 (Fla. 1994).  "Legislative intent in this context 'is a shorthand reference to the ordinary tools for discerning statutory meaning: text, context and purpose.'" QBE, 94 So.3d at 551.  The primary guide is the language of the statute, considering both the meaning of the words and the context.  Id.

At the outset, the Court notes that the 2007 Policy and the 2010 Policy contain the words required by s. 626.924(1) on the declarations page; those words convey the message that is intended to alert the public to a risk associated with a surplus lines policy.  Therefore, Defendant Axis is in substantial compliance.  The requirements of capital letters, or a particular font are requirements that are designed for the protection of the public.  The Legislature did not specify any penalty for noncompliance in the statute.  The Florida Insurance Code, s. 627.418(1), Fla. Stat.,  supports a finding that the absence of capital letters or a particular font does not void the policy.

The Court relies on the discussion in QBE Insurance Corp. v. Chalfonte Condominium Association, 94 So.3d 541, 552-553 (Fla. 2012).  After consideration, the Court **grants** the Motion to Dismiss as to this issue.

3. Count II - Breach of Contract

The parties stipulated to the dismissal of Count II without prejudice.  The Court has dismissed Count II without prejudice.

After consideration, the Court **denies** the Motion to Dismiss as to Count II as moot.

10

Case No. 8:12-CV-1249-T-17TGW

Defendant McIver moves for dismissal without prejudice.  Defendant argues that the Amended Complaint does not seek affirmative relief against him, that Plaintiff has not properly plead negligent procurement, and that an action for negligent procurement against him is premature.

Plaintiff Fourth Tee, LLC argues that Defendant McIver does not address Plaintiff's claim for declaratory judgment, and whether Defendant's inclusion as a party to the action is proper, and therefore does not dispute that Plaintiff has alleged a cause of action for declaratory judgment against Defendant McIver.    Plaintiff argues that, as an employee of an incorporated surplus lines insurance agency, pursuant to Ch. 626.9295, Florida Statutes, Defendant McIver is personally liable for any wrongful acts, misconduct, or violations of any provisions of the [Florida Insurance] code.    Plaintiff argues that Plaintiff has alleged that the policies at issue were not placed pursuant to Surplus Lines Law, and that the relief sought against Defendant McIver is found in the prayer for relief, declaring Plaintiff's rights under the policy.

Under Florida law, an action for negligent procurement against an insurance agent does not accrue until the conclusion of the related proceeding, and the proper action by the court is dismissal.  Blumberg v. USAA Casualty Insurance Co., 790 So.2d 1061, 1065 (Fla. 2001).  In the Amended Complaint, Plaintiff recognizes that Plaintiff's rights against Defendant McIver, as Plaintiff's broker, are dependent on the coverage determination made as to Defendant Axis.  After consideration, the Court dismissed Plaintiff's Amended Complaint as to Defendant McIver without prejudice.  Accordingly, it is

**ORDERED** that Defendant Axis's Motion to Dismiss (Dkt. 15)  is **granted with prejudice** as to Count I and **denied as moot** as to Count II; it is further

11

Case No. 8:12-CV-1249-T-17TGW

ORDERED that Defendant McIver's Motion to Dismiss (Dkt. 14) is **granted**, and Defendant McIver is **dismissed without prejudice**; it is further

ORDERED that the Motion for Leave to File Reply (Dkt. 25) is **denied as moot.**

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 15th day of February, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record